Fishman v Fishman (2025 NY Slip Op 06900)

Fishman v Fishman

2025 NY Slip Op 06900

Decided on December 11, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 11, 2025

Before: Manzanet-Daniels, J.P., Gesmer, González, Shulman, O'Neill Levy, JJ. 

Index No. 3695/19|Appeal No. 5343|Case No. 2024-01648|

[*1]Adam Fishman, Plaintiff-Respondent,
vAllyson Fishman, Defendant-Appellant.

Elliott Scheinberg, PC, New City (Elliott Scheinberg of counsel), for appellant.
Donohoe Talbert LLP, New York (Paul M. Talbert and Bernadette N. Schneider of counsel), for respondent.

Order, Supreme Court, Bronx County (Patsy Gouldbourne, J.), entered on or about February 6, 2024, which, to the extent appealed from as limited by the briefs, confirmed in part and modified in part a Special Referee's report, unanimously affirmed, without costs.
Supreme Court correctly determined that defendant wife failed to sustain her burden of proving that plaintiff husband engaged in wasteful dissipation of marital assets by resigning from his employment and later accepting a position with Live Oak Merchant Partners, a merchant bank financial company (see Tatum v Simmons, 133 AD3d 550, 551 [1st Dept 2015]). An investment in a business interest, even if unsuccessful, is not evidence of marital waste unless there is evidence that the investing party acted recklessly or in bad faith, and the record presents no such evidence (see Parker v Parker, 216 AD3d 433, 435 [1st Dept 2023]). Moreover, the use of marital funds to pay legitimate expenses, including the parties' respective litigation fees, does not usually constitute a waste or dissipation of marital assets (see Sinha v Sinha, 17 AD3d 131, 134 [1st Dept 2005]; Mage v Mage, 174 AD3d 884, 887 [2d Dept 2019]).
Moreover, here, the Referee found that the husband testified credibly that he left his job because his employment was in jeopardy and that he negotiated certain favorable terms in his exit to permit him to pursue work elsewhere. The Referee's credibility findings are entitled to great weight (Poster v Poster, 4 AD3d 145, 145 [1st Dept 2004], lv denied 3 NY3d 605 [where substantiated by the record, credibility determinations of the Referee, who "has an opportunity to see and hear the witnesses and to observe their demeanor," are entitled to great weight]). Furthermore, there was no evidence that his leaving his employment was the result of any improper motive or made in connection with the divorce action (see Tatum v Simmons, 133 AD3d at 551).
We reject the wife's contention that the court improvidently exercised its discretion in setting the valuation date of the parties' investment and bank accounts as of the date of trial (see Halley v Craven, 236 AD3d 512, 513 [1st Dept 2025]). Although bank accounts are typically valued as of the date of commencement when the accounts are used by the parties during the pendency of the proceeding, the court in this case did not abuse its broad discretion in departing from that general guideline (see e.g. Rywak v Rywak, 100 AD2d 542, 543 [2d Dept 1984]). The parties made no effort to separate their finances after commencement of this matrimonial action and continued to use their joint account for their daily living expenses, including their respective attorneys' fees and advances on equitable distribution (see Fehring v Fehring, 58 AD3d 1061, 1063 [3d Dept 2009]).
Supreme Court correctly determined that all of the husband's post-commencement interest in the Live Oak investments constituted his separate property. As the court noted, the husband made the first of these investments in November 2020, nearly two years after this matrimonial case was commenced (see Greenwald v Greenwald, 164 AD2d 706, 716 [1st Dept 1991], lv denied 78 NY2d 855 [1991]). The record supports a finding that, in November 2020, the husband's father borrowed funds from his credit line to loan the husband $400,000 to make the initial Live Oak investment on certain conditions, including that the husband pay the interest on his father's credit line advance. The wife continues to take the position that $275,000 of those funds should be treated as repayment of a debt owed by the husband's father to the parties, and that she is thus entitled to distribution of a portion of the value of the investment. However, the record supports the determination that the parties' loan to the husband's father was interest-free and without a deadline for repayment. The court's rejection of the referee's recommendation that any portion of the husband's Live Oak investments be treated as marital, and its confirmation of the distribution to the wife of one half of the outstanding debt owed to the parties by the husband's father, is an implicit rejection of the wife's claims. Since that conclusion is supported by the record, we decline to reverse it (see Poster, 4 AD3d at 145).
Furthermore, the court providently exercised its discretion in imputing $500,000 per year income to the husband, and there is no reason to disturb the Referee's credibility determinations and factual findings, which are entitled to great deference on appeal (see e.g. Matter of Anthony L. v Bernadette R., 193 AD3d 510, 511 [1st Dept 2021]).
We decline, in the exercise of discretion, to award the wife spousal maintenance above the statutory cap (see Van Boxtel v Van Boxtel, 233 AD3d 463, 463 [1st Dept 2024]). At the time of trial, the parties were in their early 40s and in good health. The wife was gainfully employed at a lobbying firm with an upward career trajectory, despite having been a homemaker for several years. As for the parties' lifestyle during the marriage, the voluminous trial testimony and exhibits provide scant evidence of their actual lifestyle. Although the wife retained a forensic expert, the expert testified that he did not prepare a lifestyle analysis. Furthermore, because there were no pendente lite awards, the parties' continued use of joint marital accounts makes it impossible to distinguish between individual, joint, and children's expenses. Notably, the Referee also failed to consider the parties' substantial investment income from brokerage accounts, which still held several million dollars at the time of trial and will be distributed equally between the parties. For similar reasons, the three-year award of post-divorce maintenance is reasonable and appropriate.
Finally, the court properly awarded only prospective maintenance and child support (see Hofmann v Hofmann, 173 AD3d 531, 533 [1st Dept 2019]). Shortly after the date of commencement, the parties agreed that the husband would continue to deposit his salary into a joint checking account out of which they would pay the family's expenses. Beginning in June 2021, after the husband was no longer receiving a salary, the parties entered into a series of stipulations to liquidate certain assets and deposit the proceeds into a joint account to continue to cover their respective living expenses, the children's expenses, and attorneys' fees. Moreover, the wife never moved for interim relief.
We have considered the wife's remaining contentions and find them unavailing. THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 11, 2025